UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
SHARON DORSETT, as the administratix of
the Estate of Jo'anna Bird, ROBIN PELLEGRINI,
THE LAW OFFICES OF FREDERICK K.
BREWINGTON, and FREDERICK K. BREWINGTON,

                        Plaintiffs,

         -against-

COUNTY OF NASSAU,
NASSAU COUNTY LEGISLATURE,
PETER SCHMITT, in his individual and official
capacities and as Legislator/Presiding Officer of the
Nassau County Legislature, and EDWARD MANGANO,
in his individual and official capacities as
County Executive of the County of Nassau,

                        Defendants.
-----------------------------------------------------------------------X

**OPINION AND ORDER**
11-CV-5748 (SJF)(GRB)

**FILED**
IN CLERK'S OFFICE
US DISTRICT COURT E D N Y

★   JAN 2 2013   ★

LONG ISLAND OFFICE

FEUERSTEIN, J.

     On November 23, 2011, Sharon Dorsett ("Dorsett"), Robin Pellegrini ("Pellegrini"), The

Law Offices of Frederick K. Brewington (the "Law Offices"), and Frederick K. Brewington

(together with the Law Offices, "Brewington," and together with Dorsett, Pellegrini and the Law

Offices, "plaintiffs") commenced this action against the County of Nassau (the "County") and

Peter Schmitt ("Schmitt," and together with the County, "defendants"), the former Presiding

Officer of the Nassau County Legislature (the "Legislature"),[1] alleging that defendants violated

plaintiffs' constitutional rights by delaying the Legislature's consideration of two (2) settlement

agreements reached in civil lawsuits brought by Brewington on behalf of Dorsett and Pellegrini

against the County and other defendants. [Docket Entry No. 1].[2] Now before the Court are the

---

[1]      Schmitt died on October 17, 2012. [Docket Entry No. 37].
[2]      County Executive Edward Mangano and the Legislature were voluntarily dismissed from
the case on June 15, 2012. [Docket Entry No. 35].

motions of Schmitt and the County to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the motions are GRANTED.

I.     Background

The settlements at issue in this case arose from unrelated civil actions in which Brewington served as counsel to the plaintiffs: (1) the Pellegrini action, which alleged that the County's termination of Pellegrini's employment violated her constitutional rights, [Docket Entry No. 6] ("Am. Compl.") at ¶¶ 7-8, 12; see Williams v. County of Nassau, No. 03-CV-6337 (E.D.N.Y. Dec. 18, 2003); and (2) the Dorsett action, which alleged that the County and others failed to provide Jo'Anna Bird with adequate police protection, leading to Ms. Bird's murder, Am. Compl. at ¶¶ 6, 18; see Dorsett v. County of Nassau, No. 10-CV-1258 (E.D.N.Y. Mar. 19, 2010).[3]

In July 2011, settlement agreements were reached in both the Pellegrini and Dorsett actions, Am. Compl. at ¶¶ 13, 21, which were contingent upon approval by the Legislature, id. at ¶ 23. According to plaintiffs, Brewington encouraged the County to promptly place the settlement agreements on the Legislature's agenda, id. at ¶¶ 14-16, 22-24, but the Legislature did not consider them until January 2012, at which time it approved the Dorsett settlement and rejected the Pellegrini settlement. County's Memorandum of Law in Support of Motion to Dismiss [Docket Entry No. 30] ("Cnty. Memo.") at 4-5.

Plaintiffs allege that Schmitt had "sole discretion as to the agenda of the Legislature and its committees," Am. Compl. at ¶ 39, and that he refused to place the settlement agreements on the Legislature's agenda between July 2011 and January 2012 as a "result of his personal animus

---

[3]      The Court takes judicial notice of documents filed in the Dorsett and Pellegrini actions. See, e.g., Global Network Commc'ns, Inc. v. City of N.Y., 458 F.3d 150, 157 (2d Cir. 2006). The Court takes such judicial notice "not for the truth of the matters asserted in the other litigation but rather to establish the fact of such litigation and related filings." Id. (internal quotation marks omitted).

against [Brewington] for [his] advocacy on behalf of the minority community and others whose rights have been violated by the actions of the [C]ounty." Id. at ¶ 40. Schmitt's delay was allegedly "designed to and/or ha[d] the effect of chilling, deterring, and/or retaliating against [Brewington], other civil rights advocates, and their clients from seeking redress in the courts for the deprivation of their rights by the County." Id. at ¶ 41. Plaintiffs also allege that "[t]he failure or refusal of the other Defendants to take any steps to curb, deter, or prevent Schmitt from so depriving [p]laintiffs of their rights resulted from their acquiescence, condoning, or agreement with Schmitt's plan to deprive [p]laintiffs of their rights." Id. at ¶ 43.

As evidence of Schmitt's alleged animus, plaintiffs rely upon a television interview given by Schmitt on November 18, 2011, during which he stated: "I did not feel comfortable voting on a settlement that would put a couple million dollars into [Brewington's] . . . pocket while we were being sued, so I requested an opinion of the County Board of Ethics to see that there was no conflict there." Id. at ¶ 25. According to plaintiffs, Schmitt's comment was in reference to another lawsuit initiated by Brewington on behalf of certain residents of Nassau County challenging a proposed redistricting of the Legislature on the ground that it violated the Voting Rights Act of 1965, 42 U.S.C. § 1971, et seq. Id. at ¶¶ 26-29. Brewington also appeared before the Legislature on May 16, 2011 to argue against the proposed redistricting. Am. Compl. at ¶ 28.[4]

Plaintiffs allege that the Legislature's six-month delay in approving the Dorsett agreement "caused Jo'Anna Bird's children to suffer a pecuniary loss of approximately $8,000,000 . . . due to a drastic decline in available interest rates from July 14, 2011, to January 30, 2012," Plaintiff's Memorandum in Opposition to Motion to Dismiss [Docket Entry No. 32]

---

[4]     Plaintiffs make various additional allegations regarding the redistricting controversy and subsequent election that do not involve the defendants and are irrelevant to the case at bar. See Am. Compl. at ¶¶ 31-36.

3

("Pl. Memo.") at 3-5,[5] and allege violations of their rights under (1) the First Amendment, (2) the Fourteenth Amendment, (3) the Voting Rights Act of 1965, and (4) state and local law.

II.     Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. at 678 (quoting Twombly, 550 U.S. at 557).

The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Matson v. Bd. of Educ. of the City Sch. Dist. of N.Y., 631 F.3d 57, 63 (2d Cir. 2011); see also Ruston v. Town Bd. for the Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

III.    Discussion

A.      Schmitt

Plaintiffs have sued Schmitt in both his individual and official capacities pursuant to 42 U.S.C. § 1983 ("section 1983"). To state a claim for relief pursuant to section 1983, plaintiffs must establish that defendants deprived them of a right secured by the Constitution or laws of the

---

[5]      Plaintiffs fail to allege any particular damages incurred by Pellegrini and Brewington.

United States while acting under color of state law.  See, e.g., Taylor v. internet.com/ethernet, No. 12-CV-2025, 2012 WL 1821416, at *1 (E.D.N.Y. May 18, 2012).

Legislators are absolutely immune from suit in their individual capacities for all actions taken "'in the sphere of legitimate legislative activity.'" Bogan v. Scott-Harris, 523 U.S. 44, 54 (1998) (internal quotation marks omitted); see also State Emps. Bargaining Agent Coalition v. Rowland, 494 F.3d 71, 82 (2d Cir. 2007) ("It is uncontroversial that legislative immunity may bar claims for money damages brought against state and local officials in their personal capacities.").  "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." Bogan, 523 U.S. at 54.  "[I]t simply is not consonant with our scheme of government for a court to inquire into the motives of legislators." Id. (internal quotation marks omitted).

Here, Schmitt's allegedly wrongful conduct consisted of his determination of when to place the settlement agreements on the Legislature's agenda.  This is a quintessentially legislative function, as such a decision is an "integral step[] in the legislative process." Id. at 55; see also Almonte v. City of Long Beach, 478 F.3d 100, 107 (2d Cir. 2007) ("We hold that legislative immunity is not limited to the casting of a vote on a resolution or bill; it covers all aspects of the legislative process, including the discussions held and alliances struck regarding a legislative matter in anticipation of a formal vote."); Yeldell v. Cooper Green Hosp., Inc., 956 F.2d 1056, 1063 (11th Cir. 1992) ("[T]he decision whether or not to introduce legislation is one of the most purely legislative acts there is.").  The decision of when to introduce the settlement agreements for legislative approval had prospective policy and budgetary implications and cannot be analogized to mere "administrative" action, which is not shielded by legislative immunity.  Cf., e.g., Harhay v. Town of Ellington Bd. of Educ., 323 F.3d 206, 211 (2d Cir. 2003)

5

(holding that the defendant board members' decisions with respect to "an employment situation regarding a single individual" were "administrative, not legislative, in nature," because they "did not engage in the kind of broad, prospective policymaking that is characteristic of legislative action"); Yeldell, 956 F.2d at 1063 ("Unlike [] personnel matters . . . , such decisions [of whether to introduce legislation] are an important part of the process by which legislators govern legislation and, therefore, entitle the decision-maker to the protection of legislative immunity."). Moreover, as Schmitt's conduct was legislative in nature, his allegedly unlawful motivation does not deprive his actions of legislative immunity. See Bernard v. Cnty. of Suffolk, 356 F.3d 495, 505 (2d Cir. 2004) ("[A]n unworthy purpose cannot defeat absolute legislative immunity as long as the challenged conduct is even arguably within delegated legislative powers and does not usurp the role of other branches of government.") (citing Tenney v. Brandhove, 341 U.S. 367, 377 (1951) ("The claim of an unworthy purpose does not destroy the privilege.")).

Therefore, the claims against Schmitt in his personal capacity are barred by the doctrine of legislative immunity and are dismissed.[6]

B.    The County[7]

1.    First Amendment Claim

To state a colorable claim that they were deprived of their rights under the First Amendment, plaintiffs must allege that they: (1) have an interest protected by the First

---

[6]    As discussed below, even if Schmitt's actions were not protected by legislative immunity, plaintiffs' amended complaint must be dismissed due to its failure to state a cognizable claim that defendants violated plaintiffs' rights under federal or state law.

[7]    The claims against Schmitt in his official capacity are construed as claims against the County. See Hafer v. Melo, 502 U.S. 21, 25 (1991) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.") (internal quotation marks omitted); Kent v. New York, No. 11-CV-1533, 2012 WL 6024998, at *14 (N.D.N.Y. Dec. 4, 2012) ("Legislative immunity only protects municipal officers from civil liability when they are sued in their personal capacities, and not when sued in their official capacities.").

Amendment; (2) defendants' actions were motivated or substantially caused by their exercise of their First Amendment right; and (3) defendants' actions effectively chilled the exercise of that right. Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001).

Plaintiffs' conclusory allegations that Schmitt's delay in placing the settlement agreements on the Legislature's agenda was motivated by animus related to Brewington's advocacy against the proposed redistricting are not sufficient to support a First Amendment claim. In fact, plaintiffs' allegations support the inference that the delay was due at least in part to Schmitt's desire to seek an ethics opinion regarding whether he could propose settlement payments to Brewington while Brewington was maintaining separate civil actions against him. Since plaintiffs fail to make more than conclusory allegations, they are not entitled to discovery to explore their speculative theory as to Schmitt's motivation. See Iqbal, 556 U.S. at 678-79 ("[T]he doors of discovery [are not unlocked] for a plaintiff armed with nothing more than conclusions.").

Moreover, plaintiffs have failed to allege, other than in conclusory fashion, that defendants' conduct chilled the prospective exercise of their First Amendment rights. Curley, 268 F.3d at 73 ("'[A]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm.'") (quoting Laird v. Tatum, 408 U.S. 1, 13-14 (1972)). Brewington continued to litigate both the Pellegrini and Dorsett actions during and after the Legislature's delay, and plaintiffs have not alleged any objective harm incurred in connection with the redistricting litigation. Id. ("Where a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech."). Accordingly, plaintiffs' First Amendment claim is dismissed.

7

 2.     Voting Rights Act Claim

Plaintiffs' allegation that they were retaliated against in violation of the Voting Rights

Act due to Brewington's advocacy against the proposed redistricting plan fails for the same

reasons.  As explained above, the alleged link between the redistricting issue and the delay in

bringing the settlement agreements before the Legislature is speculative.  Accordingly, the

Voting Rights Act claim is dismissed.

 3.     Due Process Claim

"In order to state a valid claim for deprivation of procedural due process, a plaintiff must

'demonstrate that he possessed a protected liberty or property interest, and that he was deprived

of that interest without due process.'" Banks v. Human Res. Admin., No. 11-CV-2380, 2013

WL 142374, at *2 (E.D.N.Y. Jan. 11, 2013) (quoting Hynes v. Squillance, 143 F.3d 653, 658 (2d

Cir. 1998)).  "The fundamental requirement of procedural due process is the opportunity to be

heard at a meaningful time and in a meaningful manner."  Id. (citing Goldberg v. Kelly, 397 U.S.

254, 267 (1970)).

Plaintiffs argue that they were deprived of due process because the settlement agreements

terminated their pending lawsuits and the subsequent legislative delay thus deprived them of

their right "to a fair opportunity to prevail at trial." Pl. Memo. at 12.  Plaintiffs agreed to

terminate the Dorsett and Pellegrini actions, prior to trial, pursuant to settlement agreements and

cannot now claim that they were denied trials based upon the agreements they made.

Furthermore, Brewington continued to actively litigate the Dorsett matter before the Honorable

Arthur D. Spatt throughout the time that legislative approval was pending, including at a court

conference where the issue of the delay in legislative approval was raised, see No. 10-CV-1258

(E.D.N.Y. Mar. 19, 2010) [Docket Entry Nos. 127, 199, 201], and the Honorable Roslynn R.

Mauskopf has continued to exercise jurisdiction over the Pellegrini action. See No. 03-CV-6337 (E.D.N.Y. Apr. 18, 2011). Given Judge Spatt's responsiveness to plaintiffs' concerns regarding the pace of the settlement approval process in the Dorsett action and Judge Mauskopf's continuing jurisdiction over the Pellegrini action, plaintiffs' contention that they were denied due process and access to the courts is without merit.

Moreover, plaintiffs fail to allege that they were deprived of a protected property interest. Although a due process claim may be premised upon a "legitimate claim of entitlement" to a benefit, such an entitlement only arises "if, 'absent the alleged denial of due process, there is either a certainty or a very strong likelihood that the benefit would have been granted.'" Soundview Assocs. v. Town of Riverhead, No.09-CV-4095, 2012 WL 4465768, at *12 (E.D.N.Y. Sept. 28, 2012) (quoting RRI Realty Corp. v. Inc. Vill. of Southampton, 870 F.2d 911, 917 (2d Cir. 1989)). The settlement agreements were contingent upon approval by the Legislature, see Pl. Memo. at 12, and such approval was within the sole discretion of the legislators. "[W]hen an official action is truly discretionary under local law, one's interest in a favorable decision does not rise to the level of a property right entitled to procedural due process protection." Walentas v. Lipper, 862 F.2d 414, 419 (2d Cir. 1988) (internal quotation marks omitted); see also Soundview, 2012 WL 4465768, at *10 ("An entitlement to a benefit arises . . . 'only when the discretion of the issuing agency is so narrowly circumscribed' as to virtually assure conferral of the benefit.") (quoting RRI Realty, 870 F.2d at 917). Therefore, plaintiffs' hope that the settlement agreements would be approved was "a mere unilateral expectancy not rising to the level of a property right guaranteed against deprivation by the Fourteenth Amendment." Yale Auto Parts, Inc. v. Johnson, 758 F.2d 54, 59 (2d Cir. 1985). Accordingly, plaintiffs due process claim is dismissed.

9

C.      Municipal Liability

In light of the absence of an underlying constitutional violation, plaintiffs cannot sustain a

claim for municipal liability.  See MacFall v. City of Rochester, No. 10-CV-4638, 2012 WL

3871414, at *2 (2d Cir. Sep. 7, 2012) ("Given that plaintiffs failed to adequately allege an

underlying constitutional violation, the district court did not err in dismissing their claim for

municipal liability."); Martinez v. City of N.Y., 340 F. App'x 700, 702 (2d Cir. 2009) ("Because

the arresting officers in this case did not violate plaintiff's constitutional rights, there can be no

municipal liability even if plaintiff had alleged a specific policy or custom that led to his

detainment."); Lamothe v. Town of Oyster Bay, No. 08-CV-2078, 2012 WL 6720781 (E.D.N.Y.

Dec. 27, 2012) ("If there is no underlying constitutional violation, then the Plaintiffs' claims for

municipal liability . . . must ultimately fail.").  Accordingly, plaintiffs' claim against the County

(and Schmitt in his official capacity) is dismissed.[8]

D.      State Law Claims

Plaintiffs assert a claim pursuant to Nassau County Administrative Code § 21-9.8(5),

which provides that "[n]o person engaged in any activity to which this title applies shall retaliate

or discriminate against any person because he or she has opposed any practices forbidden under

the title or because he has filed a complaint, testified or assisted in any proceeding under this

title."  As discussed with respect to plaintiffs' constitutional claims, plaintiffs have failed to

make non-conclusory allegations that Schmitt's conduct in this case was motivated by retaliatory

animus toward Brewington.  Accordingly, this claim is dismissed.

---

[8]      Given plaintiffs' failure to assert a cognizable constitutional claim, it is not necessary to
consider whether Schmitt was a "policymaker" whose actions may form the basis for liability on
behalf of the County pursuant to Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).  See, e.g.,
Brocuglio v. Proulx, 324 F. App'x 32, 35 (2d Cir. 2009).

Plaintiffs also assert a claim pursuant to Article 78 of the New York Civil Practice Law and Rules. Given that the Legislature has acted upon both settlement agreements since the commencement of this action, this claim is moot.

      E.     Attorneys' Fees

The County seeks attorneys' fees pursuant to 42 U.S.C. § 1988(b) ("section 1988"), which provides that "[i]n any action or proceeding to enforce a provision of section[] . . . 1983 . . . of this title, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ." Section 1988 "authorizes a district court to award attorney's fees to a defendant upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation." Fox v. Vice, 131 S.Ct. 2205, 2213 (2011) (internal quotation marks omitted); see also T.S. Haulers, Inc. v. Cardinale, No. 09-CV-451, 2011 WL 344759, at *1 (E.D.N.Y. Jan. 31, 2011) ("Under [s]ection 1988, a prevailing defendant may recover attorneys' fees only 'when the suit is vexatious, frivolous, or brought to harass or embarrass defendant.'") (quoting Hensley v. Eckerhart, 461 U.S. 424, 429 n.2 (1983)); Panetta v. Crowley, 460 F.3d 388, 399 (2d Cir. 2006) ("[A] plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so.") (internal quotation marks omitted). "A prevailing defendant need not show bad faith by a plaintiff to be entitled to attorney's fees, though such a showing provides an even stronger basis for the award." Crowley, 460 F.3d at 399 (internal quotation marks omitted). Furthermore, "a defendant may deserve fees even if not all the plaintiff's claims were frivolous." Fox, 131 S.Ct. at 2214.

The County has failed to show that an award of attorneys' fees pursuant to section 1988 is warranted here. The County asserts that "there is no basis in law or fact for [Mangano and the

County] to be parties to this litigation." Cnty. Memo. at 15. The County is correct that plaintiffs had no basis to include Mangano in this action. However, the Court may only award fees that "would not have accrued but for the frivolous claim." <u>Fox</u>, 131 S.Ct. at 2216. According to plaintiffs, Schmitt was a final policymaker for the County with respect to the Legislature's agenda, thereby providing a basis for municipal liability pursuant to <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658 (1978). <u>See Jeffes v. Barnes</u>, 208 F.3d 49, 57 (2d Cir. 2000) ("The municipality . . . [may] be held liable . . . [if] the injury was inflicted by . . . those whose edicts or acts may fairly be said to represent official policy.") (internal quotation marks and alterations omitted). Although the County asserts that Schmitt was only one (1) legislator with one (1) vote among many and did not alone formulate the County's policies, it did not address whether Schmitt had specific authority over the placement of the settlement agreements on the Legislature's agenda. <u>Id.</u> ("[T]he official in question need not be a municipal policymaker for all purposes. Rather, with respect to the conduct challenged, he must be 'responsible under state law for making policy <u>in that area</u> of the [municipality's] business.'") (quoting <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 123 (1988)) (alterations in original). The Court cannot conclude on the record before it that plaintiffs' municipal liability theory based upon Schmitt's alleged final authority over the Legislature's agenda is frivolous. Therefore, the County has not demonstrated that it would not have had to defend this action but for the Mangano claim, and there is no basis to award the fees it has incurred. Accordingly, the County's motion for fees is denied.

III.    Conclusion

     For the foregoing reasons, the motions of Schmitt [Docket Entry No. 25] and the County [Docket Entry No. 28] to dismiss the amended complaint are granted, and the County's motion for attorneys' fees is denied. The Clerk of Court is respectfully directed to close this case.

**SO ORDERED.**

s/ Sandra J. Feuerstein

Sandra J. Feuerstein
United States District Judge

Dated: January 24, 2013
        Central Islip, New York

13